CLARA McDANIEL v. CITY OF BENSON AND ANOTHER.[1]

May 28, 1926.

No. 25,346.

**Industrial Commission will not be reversed because of admission of incompetent evidence.**

1. The Industrial Commission is not subject to the rules of evidence governing courts, and their decisions will not be disturbed because incompetent evidence may have been admitted.

**Police officer on duty within compensation law.**

2. A police officer, while on duty, went to his home where he kept his weapons to get his revolver. It accidentally fell upon the floor and was discharged breaking his leg. *Held* that the compensation law applied.

> Workmen's Compensation Acts, C. J. p. 40 n. 95; p. 49 n. 52; p. 84 n. 59 New; p. 115 n. 32; p. 124 n. 62, 63.

---

> See notes in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 28 R. C. L. p. 827; 3 R. C. L. Supp. p. 1600; 4 R. C. L. Supp. p. 1871; 5 R. C. L. Supp. p. 1580.
> See note in 10 A. L. R. 201.

Certiorari to review a judgment of the Industrial Commission awarding compensation in a proceeding brought under the Workmen's Compensation Act. Affirmed.

*L. K. Eaton* and *Kirby, Kirby & Kirby*, for relators.
*John I. Davis*, for respondent.

TAYLOR, C.

Certiorari to review the judgment of the Industrial Commission affirming the decision of a referee awarding compensation to Clara McDaniel for the death of her husband.

The deceased, Leith H. McDaniel, was the police officer of the city of Benson, a place of about 2,500 inhabitants. He was desig-

[1]Reported in 209 N. W. 26.

nated as Chief of Police although he was the only police officer of the city. About 4 o'clock on the afternoon of May 26, 1925, he went to his home to get his revolver. He had received a new shoulder holster that day which he put on and placed the revolver in it and then stooped over for some purpose. The revolver dropped out of the holster and when it struck the floor was discharged shattering the bones of his right leg between the knee and the ankle. He was taken to a hospital and died three weeks later from blood poisoning resulting from the wound.

The claim was submitted to the commission on the evidence taken before the referee. The commission approved the findings of fact made by the referee and affirmed his decision. The relators present seven assignments of error. The first five challenge rulings of the referee admitting testimony of statements made by the deceased as to the manner in which the accident happened. The other two attack the finding that the injuries of the deceased arose out of and in the course of his employment.

The hearings before the commission and its referees are rather informal and of a summary character, and are not subject to the rules of evidence which govern proceedings in court. G. S. 1923, § 4313. If their conclusions are supported by sufficient competent evidence, they will not be disturbed for the reason that incompetent evidence may have been received.

Mr. McDaniel was alone in the house at the time of the accident, his wife having gone down town and his son being at school. He dragged himself to the telephone and evidently first called the doctor and then called Mrs. Minikas, a friend living two or three blocks away, and asked her to call his wife saying that he had accidentally shot himself. She called Mrs. McDaniel and then ran to the McDaniel home. The doctor had arrived and proceeded to dress the wound and stop the flow of blood. Mr. McDaniel told them briefly how the accident happened. While at the hospital he told how it happened to several other witnesses who testified at the hearing. How much of this testimony offended the hearsay rule is not important, for the statements were all to the same general

effect, and at least those made to the doctor and Mrs. Minikas immediately following the accident were properly received in evidence. Furthermore there is nothing which would justify saying that the injuries were intentionally self-inflicted and the presumption is to the contrary.

That a policeman is within the protection of the compensation law was settled in State v. District Court, 134 Minn. 26, 158 N. W. 790. Relators rely on the provision that the statute does not apply to employes "except while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service."

Relators urge that the service of the deceased did not require his presence at his home and that injuries received while in his home did not arise out of his employment within the meaning of the act. It is thoroughly settled that the act is to be liberally construed in favor of the employe. That the deceased sustained his injuries during the hours of service is beyond question. He was the sole police officer of the city and his service required him to perform all the duties usually performed by such officers. His field of service embraced the entire city. At times such officers have occasion to use weapons, and may properly carry them at any time. The deceased kept his weapons at his home when not carrying them. If, when on duty unarmed, he concluded that he ought to have his revolver, it cannot well be said that he was outside the line of duty in going to the place where it was kept to get it.

We are of the opinion that the facts fully justify the conclusions of the commission and its award is affirmed.