# LYDIA ANDERSON v. COCA COLA BOTTLING COMPANY AND ANOTHER.[1]

November 10, 1933.

No. 29,604.

*Merriam & Wright,* for relators.
*Mark F. Crotty* and *C. E. Warner,* for respondent.

*HILTON, Justice.*

Certiorari to review the order of the industrial commission awarding compensation because of the death from general septicemia of Arthur W. Anderson, the husband of Lydia Anderson and the father of Mary Jane and Leota Anderson, aged, respectively, six and three years. The award was $18 per week during dependency (total not to exceed $7,500) and funeral expenses paid.

Relators' claim is that Anderson was an independent contractor and not an employe; that he did not sustain an accidental injury in the service of relator; that his infection and consequent death did not arise out of and in the course of his employment or service

[1]Reported in 251 N. W. 3.

for relator; that his wages and net income did not amount to $30 a week.

This case simply involves fact issues. They were for the determination of the industrial commission. Its findings on the issues presented had sufficient support in the evidence. Under the familiar rule consistently followed by this court and in most jurisdictions, such findings cannot here be disturbed. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426. It is proper that a rather full statement be made of the evidence.

Anderson was the owner of a Chevrolet truck, his sole business equipment. On June 29, 1931, he was engaged by relator Coca Cola Bottling Company to haul and deliver its bottled products by use of the truck at a compensation fixed at $1.25 per hour. The coca cola beverage was transported in wooden cases each holding 24 bottles. The suggestion of relators that Anderson was an independent contractor and not an employe is not tenable. Anderson was hired by it to do the specified simple work, was under its direction and control, did no work on his own responsibility, and did not exercise any initiative. His status could not be dignified to that of an independent contractor. The facts bring the situation well within that presented in Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134, in which two men, each of whom owned a team and wagon, were employed to haul sewer pipe at 50 cents a ton and in which one of them was injured. Compensation was there awarded, as it was in Dunn v. Reeves C. Y. Co. Inc. 150 Minn. 282, 184 N. W. 1027, where Dunn provided his own truck and was paid by the ton for hauling coal.

On July 3, 1931, Anderson sustained an injury to the middle finger of his right hand. Some of the evidence tending to prove that the injury was received in the course of his employment was perhaps hearsay. Evidence was admitted over the objection of relators that Anderson told the foreman that he had cut his finger on a bottle and that a doctor had put the bandage on for him. It may be that this evidence was admissible under the res gestae rule. Similar statements as to how and where he sustained the injury were made by Anderson to physicians who cared for him. There

was, however, sufficient competent evidence justifying the commission's finding. That is all that is necessary. 1 Mason Minn. St. 1927, § 4313; McDaniel v. City of Benson, 167 Minn. 407, 209 N. W. 26; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; Cooper v. Mitchell, 188 Minn. 560, 247 N. W. 805. On the day above mentioned Anderson started to work at nine a. m. The foreman testified that he saw him during the forenoon; that he was close to him and at that time there was no bandage on his finger; that when he again saw him at about six o'clock that afternoon there was then a bandage thereon; that it was a clean one and had the appearance of having been put on by a doctor. This man further testified that he did not, as was his ordinary duty, report Anderson to the office because he saw he had already been to a doctor. In his testimony he further stated that he knew that Anderson had had an accident. Under the situation thus presented the commission might well infer that an injury was received by Anderson in the course of his employment. It was not necessary that there be an eyewitness to the accident. State ex rel. Albert Dickinson Co. v. District Court, 139 Minn. 30, 165 N. W. 478; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754.

On July 7 Anderson went to the University dispensary, where he was treated for an infection of the injured middle finger. On July 10 he went to the United States Veterans Hospital, where it was immediately discovered that he had a "serious septic infection" going up the arm. His finger was then lanced and otherwise properly cared for. He died of acute septicemia on July 16, 1931. There was an unbroken sequence of events from the injury to the death. The medical testimony for respondent fully established that the death resulted directly from the accidental injury. There was no medical evidence for relators.

Anderson worked at irregular hours from June 29 to July 3, both inclusive. He received for his services checks amounting to $54.81. There was evidence that other employes of relator engaged in delivering its products using relator's trucks received an average wage of about $30 per week; that the average hours per day worked by two of such men "might be 10 hours or 8 hours or

12 hours"; that their average working hours per day would be 10. From this and other evidence we conclude that the amount of the weekly award was proper.

One hundred dollars attorneys' fees allowed in this court.

Affirmed.